506 So.2d 584 (1987)
STATE of Louisiana
v.
Thad TATUM, Jr.
No. KA-5287.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1987.
*587 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for plaintiff.
Henry P. Julien, Jr., New Orleans, for defendant.
Before GARRISON, BARRY and CIACCIO, JJ.
BARRY, Judge.
The defendant was convicted of armed robbery, La.R.S. 14:64, attempted armed robbery, R.S. 14:27 and 14:64, and attempted second degree murder, R.S. 14:27 and 14:30.1. He was sentenced to 50 years for the armed robbery and 45 years for the attempted armed robbery to run consecutively, and 45 years concurrent for the attempted murder. He was multiple billed as a double offender and resentenced to the original sentences.

BACKGROUND
According to the State's evidence, on May 31, 1983 at about 5:30 a.m. the defendant confronted Homer Mayeaux as he parked his automobile in a lot at S. Claiborne and Tulane Avenues. The defendant put a gun to Mayeaux's head, demanded his money, wristwatch and keys, then got into his automobile. He drove back and forth trying to exit the lot then crashed through a security chain.
Twenty minutes later the defendant stopped at a self-service gas station, pulled a gun and ordered Ms. Jessie Conerly, the cashier, to give him money from the register. When she called the police, the defendant pointed the gun at her head and fired, which caused a dent in the booth's bullet proof glass. As the defendant drove off Ms. Conerly noted the car's license number.
On July 4, 1983 police officers attempted to cite the defendant for disregarding a stop sign. He fled and was apprehended after running a second stop sign and having struck another vehicle. The officers determined that the car the defendant was driving had been stolen, placed him under arrest, and seized a gun from the floorboard. Both Mayeaux and Conerly identified the defendant in photographic lineups and at trial.
The defendant and his former girlfriend testified they went to a hotel about 1:30 a.m. on May 31, 1983 and remained there until 4:30 p.m. His mother, father, sister and "future brother-in-law" testified the defendant had purchased the allegedly stolen Granada in June, 1983.

IDENTIFICATION

ASSIGNMENT # 1
The defendant contends the trial court erred by denying the motion to suppress his identification. He claims prejudice because a physical lineup was not conducted and a police officer "who had no involvement with the case" was present at a photographic lineup held six weeks after the alleged crimes.
For an out of court identification to be suppressed the defendant must prove that the procedure was so suggestive that there was a likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The *588 factors to evaluate if an identification is suggestive are: (1) the witness' opportunity to view the defendant during the commission of the crime, (2) the degree of attention paid by the witness, (3) the accuracy of the witness' prior description, (4) the witness' certainty during the identification, and (5) the length of time between the crime and the identification. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Buchanan, 463 So.2d 660 (La.App. 4th Cir. 1985).
Both victims identified the defendant from photo lineups four and nine days after his arrest. Mayeaux observed the defendant for approximately five minutes at close range during the armed robbery and while he tried to exit the lot. Conerly stared at the defendant when he pointed the gun at her head. Both gave descriptions of the defendant immediately following the crimes and positively identified his photograph from groups of six.
There is no legal necessity to conduct a physical lineup. All of the criteria for a proper identification were met.

PREJUDICIAL REMARKS

ASSIGNMENTS # 2, 4 and 7
The defendant alleges the trial court erred by not declaring a mistrial when the arresting officer's testimony referred to his prior criminal record. He contends the police officer is a "court official" within C.Cr.P. Art. 770, thus a mistrial was mandated when the officer testified he arrested the defendant for being a convicted felon in possession of a firearm, R.S. 14:95.1 (that charge was nol prossed).
C.Cr.P. Art. 770 in pertinent part provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
A police officer is not a "court official" under C.Cr.P. Art. 770 and absent a showing of a pattern of unresponsive answers or improper intent by the officer, a mistrial is not required. The appropriate remedy for an improper remark by a police officer is an admonition to the jury. State v. Harper, 430 So.2d 627 (La.1983); State v. Harris, 383 So.2d 1 (La.1980).
The trial judge offered to admonish the jury; however, defense counsel requested that no admonition be given. There is no evidence of a pattern of unsolicited, unresponsive references, thus, this assignment lacks merit.
The defendant alleges he was prejudiced by a "mug shot" taken from an unrelated prior arrest. In order to compare defendant's hair styles the prosecutor attempted to introduce an earlier police photograph. The prosecutor did not refer to the picture as a "mug shot". The photograph was not introduced and the jury had no basis to connect it to a prior crime.
The defendant also argues the prosecutor made prejudicial remarks referring to "other crimes". When the defense moved to introduce the arrest register in this case, the court asked if the State had an objection and the prosecutor responded: "Could I see it please? It is my understanding that there are many arrest registers in this case." The State's response clearly referred to the scenario in this case, thus the trial court properly refused to grant a mistrial.
The defendant contends the court erred when it permitted the State to ask a defense witness whether the hotel which the defendant allegedly frequented was a "predominantly black" hotel.
C.Cr.P. Art. 770(1) provides in pertinent part:

*589 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury.
The question might be considered immaterial or irrelevant. However, we find it did not create the prejudice contemplated by Art. 770.

JURY MISCONDUCT

ASSIGNMENTS # 3 and 9
The defendant complains the trial court erred by dismissing a juror for cause during trial and substituting an alternate. He claims a mistrial should have been declared after it was discovered the juror failed to disclose he was mentally ill and was undergoing shock treatment.
C.Cr.P. Art. 789 provides in pertinent part:
The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict.
C.Cr.P. Art. 401 A(4) provides that a person with a mental or physical infirmity cannot serve as a juror. The excused juror had a mental illness, thus was incompetent to serve. The trial court had the discretion to seat an alternate juror rather than grant a mistrial. State v. Fuller, 454 So.2d 119 (La.1984).
The defendant also contends a mistrial was warranted because a juror talked with witness Conerly after the second day of trial.
The transcript shows that while a juror was outside the courthouse waiting for a ride she initiated a brief conversation with Conerly concerning news cameras and reporters who were covering another trial. Conerly and the juror testified no mention was made of the defendant's case and that Conerly did not realize she was speaking to a juror. The defendant's mother testified that she observed the conversation and assumed Conerly and the juror were talking about another trial.
Communication between a juror and a witness in a criminal trial, absent a showing that the defendant was prejudiced, is not a basis to reverse a conviction. State v. Ireland, 377 So.2d 299 (La.1979). There is no showing that the discussion concerned defendant's case or that there is any prejudice.

ADMISSIBILITY OF EVIDENCE

ASSIGNMENT # 5
The defendant contends the gun recovered from the stolen automobile should have been suppressed. He argues there is no connexity between the crimes for which he was being tried and the gun seized during his arrest. He claims the weapon was irrelevant and is prejudicial.
The introduction of demonstrative evidence requires that the foundation establish that it is more probable than not that the object is connected with the case. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Taylor, 422 So.2d 109 (La. 1982); cert. denied Taylor v. Louisiana, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983).
Mayeaux and Conerly identified the defendant and testified that he used a gun in each crime. The gun was in Mayeaux's stolen vehicle which had been driven by the defendant when he was arrested. It is more probable than not that the gun was used in both offenses. We conclude it was proper to admit the weapon for the jury to assess its relevancy.

*590 IMPEACHMENT

ASSIGNMENT # 6
The defendant alleges the trial court erred by refusing to allow a police officer to be questioned in an attempt to impeach the credibility of another officer.
Detective Deal, a State witness, testified that he presented the photographic lineup to Conerly. A defense witness, Officer Woolfork, stated that he conducted the lineup. Defense counsel attempted to ask Woolfork whether Deal would be telling an untruth if Deal said that he showed the photographs. The court sustained the State's objection reasoning the defense could not impeach its own witness and that the question was vague and ambiguous.
Each side has the right to impeach the testimony and credibility of every witness sworn on behalf of the other side. R.S. 15:486. Here the defense attempted to point out a contradiction which was not apparent until the second officer testified. Thus, the question was proper and should have been allowed. However, such error is harmless unless the defendant can show it contributed to the jury's verdict. C.Cr.P. Art. 921.
Both officers stated each went to Conerly's sister's home to conduct the photographic lineup. The only testimony is which officer actually showed the photos. We find the testimony insignificant and denial of the impeachment attempt did not contribute to the guilty verdict.

IMPROPER QUESTIONS

ASSIGNMENT # 8
Defendant alleges the trial court erred by allowing the State to question a defense witness and the defendant about prior arrests.
Walter George testified that he saw an acquaintance attempting to sell Mayeaux's car in June, 1983. On cross-examination the State asked George, who was clad in prison clothes, the charges for which he was incarcerated. He responded "armed robbery and murder" for which he had been arrested but not convicted.
Evidence of prior convictions, not arrests, may be used to impeach a witness' credibility. R.S. 15:495. The State concedes it was error to overrule the defense's objection, however, under C.Cr.P. Art. 921, such error is harmless unless the defendant shows that his substantial rights were affected.
The defense presented several witnesses (besides George) who testified that the defendant had legally purchased Mayeaux's automobile. Mayeaux and Conerly described the automobile and positively identified the defendant. The question about George's arrests was immaterial and constitutes harmless error.
The defense complains that the State also questioned the defendant about a prior arrest. After the defendant admitted a prior conviction for possession of marijuana, the State asked: "And were you initially charged with intent to distribute marijuana... and you got yours reduced to simple possession?" Defense counsel's objection was overruled.
It is not improper to cross-examine a witness concerning the details of a prior conviction in order to establish the true nature of the offense. State v. Jackson, 307 So.2d 604 (La.1975). The Jackson rule has been expanded to allow impeachment of a defendant concerning details of prior convictions. Since it is the bad act and not the conviction which is relevant to credibility, details of the bad act are also relevant. Some limits have been placed on the Jackson cross-examination because of the danger of prejudice; however, the trial judge has great discretion to control the length and depth of the examination depending upon the facts of the case. State v. Neslo, 433 So.2d 73 (La.1983).
We do not find any prejudice resulting from the prosecutor's inquiry.

EXCESSIVE SENTENCE

ASSIGNMENT # 10
The defendant contends his sentence was excessive.
*591 The record shows that the trial judge considered aggravating as well as mitigating factors in compliance with C.Cr.P. Art. 894.1. He noted the defendant had 48 prior arrests and stated that a lesser sentence would depricate the seriousness of his crimes. The defendant was previously convicted of possession of cocaine and possession of marijuana.
Although a sentence is within the statutory limit, it may be unconstitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering. Maximum sentences should be reserved for the egregious violators of the offense. State v. Cann, 471 So.2d 701 (La.1985); State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).
Defendant's armed robbery sentence is ½ of the maximum, the attempted armed robbery and attempted second degree murder sentences approach the maximum. The defendant is a multiple offender. He fired a gun point blank at Conerly's head and might have killed her had it not been for the bullet proof glass. He threatened Mayeaux with a gun (to his head) and stole his car and valuables.
We do not find the sentences excessive.

EQUAL PROTECTION

ASSIGNMENT # 11
Defendant contends he was denied equal protection because the State used peremptory challenges to exclude blacks from the jury.
He presents no evidence showing the number of blacks in the general venire or the race of those jurors challenged by the State.
This assignment is unsupported.

SUFFICIENCY OF EVIDENCE

ASSIGNMENT # 12
In assessing the sufficiency of evidence to support a conviction in a direct evidence case, we must determine whether, reviewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
To convict for armed robbery the State must prove (1) the taking, (2) of anything of value, (3) belonging to another, (4) from the person of another or that is in the immediate control of another, (5) by force or intimidation, (6) while armed with a dangerous weapon.
Mayeaux testified the defendant took his money, his wristwatch, and his automobile after placing a gun to his head. Conerly testified the defendant ordered her to give him the money and fired into the bullet proof glass.
To support a conviction of attempted second degree murder, the State must prove that the defendant tried to (1) kill a human being, (2) when he had the specific intent to do so. Specific intent in this case is easily inferred from the fact that the defendant pointed the gun at close range directly at the victim's face and fired. State v. Noble, 425 So.2d 734 (La.1983).
We find the evidence sufficient to convict.

ERRORS PATENT
A review for errors patent reveals that the trial judge erred in resentencing the defendant on July 19, 1985 as a multiple offender after an order of appeal had been granted on November 7, 1984. C.Cr.P. Art. 916; State v. Lutz, 491 So.2d 716 (La.App. 4th Cir.1986).
Defendant's convictions are affirmed. His adjudication and sentences as a multiple offender are vacated and his original sentences are reinstated.
CONVICTIONS AFFIRMED, SENTENCES VACATED, ORIGINAL SENTENCES REINSTATED.