DOUCET, Judge.
On February 28, 1986, the defendant, Kenneth Courville, was convicted of three counts of armed robbery, violations of La. R.S. 14:64. On February 19, 1988, the defendant was sentenced to serve three concurrent forty year terms at hard labor, without benefit of parole, probation or suspension of sentence. Defendant now appeals raising six assignments of error. ASSIGNMENTS OF ERROR NOS. 1, 3, AND 4:
By these assignments of error defendant contends that the jury erred in finding him guilty, and the court erred in not granting his motion for post verdict judgment of acquittal and his motion for a new trial. Defendant asserts that he is entitled to the relief requested because several witnesses discussed the crimes prior to defendant’s arrest, contradictory testimony was given, and the totality of the evidence is insufficient to support his conviction.
At trial, the state presented several witnesses to the two robberies which occurred at 9:15 p.m. on July 12, 1985 at Hebert’s Conoco. The evidence presented revealed that Regina Fontenot, Rene Sittig, William Debord and Francis Schoeffler were inside the store, and Angela Guillory had just exited the store and was in her car preparing to leave. Guillory noticed a bearded man on the side of the store wearing a winter cap. Guillory testified that the man walked to the entrance of the store but backed off when William Debord exited the store with boxes. Guillory testified that she saw the man remove something from his back pocket but she could not see what it was, and she left the area before he entered the store.
William Debord testified that when he left the store to throw boxes in the trash, he noticed a man standing on the side of the store who had brown hair, a beard and a mustache, and was wearing blue jeans. Debord testified that he got a good look at the man’s face because it was odd for someone to be standing where the man was. Debord testified that he saw the man enter Hebert’s Conoco, and when he returned to the store, it was being robbed. Debord stated that he knew the man he saw outside without a mask was the masked robber within the store because there was no one else in the store who had not been there previously.
Regina Fontenot testified that she was robbed by a masked gunman with a bony facial structure, a beard, and dark brownish colored hair. Ms. Fontenot also commented that the robber had a deep voice. Rene Sittig was also present during the robbery and testified that the gunman had a blondish brown beard, and was wearing blue jeans, boots, and a cream colored shirt.
The robber ordered everyone onto the floor, took the contents of the store’s cash register and Francis Schoeffler’s wallet, and exited the store.[1] Tony Daigle, Sandra *663 Rider, and George Leger pulled up to Hebert’s Conoco as the robber was leaving the store. Rider testified that she noticed a man without a mask and with a beard, who was carrying a bag and walking fast on the sidewalk. The man produced a gun, shot at Rider, and then fled on foot. Dai-gle corroborated Rider’s testimony regarding the man’s beard, and the fact that he shot at Rider.
On August 15, 1985, at about 12:55 p.m., Manuel’s Quick Stop was robbed. August 15, 1985 was the day Hurricane Danny hit Louisiana. Ms. Sheila Laughlin was working alone that day when she was confronted by a masked gunman who demanded money. Ms. Laughlin testified that the robber knew her name and used it when he demanded money. Ms. Laughlin testified that she knew who the robber was because he was a regular customer and she had known him most of her life. Specifically, Ms. Laughlin stated she recognized his voice, eyes and build.
Based on Ms. Laughlin’s identification the police arrested the defendant. On August 20, 1985, a lineup was held for the purpose of identification. Angela Guillory identified the defendant in the lineup as the man she saw outside Hebert’s Conoco on July 12, 1985. William Debord and Sheila Laughlin identified the defendant as the man who robbed them. Sandra Rider also attended the lineup but selected someone other than the defendant as the man who shot at her. At trial, Ms. Rider stated she was uncertain at the lineup and she was only guessing.
The defendant presented no testimony regarding his whereabouts on July 12, 1985. By way of defense to the July 12, 1985 crimes, defendant presented some testimony that he cooperated with police in their search for a suspect. As to the August 15, 1985 offense, defendant presented the testimony of Michael Fontenot, a friend, who testified he was with the defendant around 1:00 p.m. on August 15, 1985, and they were never around Manuel’s Quick Stop.
The defendant also presented the testimony of Wilbert Thibodeaux, a neighbor, who testified that he was on his porch the morning hours of August 15, 1985 until defendant was arrested, and he did not see defendant leave his house until he left with Fontenot at 1:00 p.m. Thibodeaux’s testimony was controverted by another defense witness, Phyllis Pitre, who testified that defendant left the house around 11:00 a.m. to drive a friend home.
The standard for appellate review when a defendant challenges the sufficiency of the evidence in support of his conviction, and when a defendant seeks review of a denial of his motion for post verdict judgment of acquittal under La.C.Cr.P. art. 821, is the same. The question on appeal is whether a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could conclude that the state proved every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Smith, 441 So.2d 739 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983).
In this case the evidence presented, viewed in a light most favorable to the prosecution, adequately proves each element of the three offenses beyond a reasonable doubt.
The first two robberies occurred on July 12,1985. William Debord and Angela Guil-lory both identified the defendant as the man they saw outside Hebert’s Conoco, unmasked, just prior to the robbery. Guil-lory testified that she saw the defendant begin to go into the store but draw back as Debord came out of the store. Debord testified that he saw the defendant enter the store and when he (Debord) returned to the store a very short time later, a masked gunman was robbing the store. Debord knew the man he saw outside was the perpetrator because no one else (who was not previously there) was in the store. Also, various partial facial and clothing descriptions by those in the store corroborated Debord’s and Guillory’s descriptions of the man outside.
During the incident the store’s cash register was robbed. Francis Schoeffler’s wallet was also taken. This later incident *664 forms the basis of the second count against defendant from the July 12, 1985 robbery.
Defendant exited the store as customers were arriving. Defendant had taken off his mask and the partial description of defendant’s appearance by these customers corroborates the description of the victims in the store.
A rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could well conclude beyond a reasonable doubt, that the defendant robbed both Hebert’s Conoco and Francis Schoef-fler.
The third robbery occurred on August 15, 1985, at 12:55 p.m., at Manuel’s Quick Stop. Sheila Laughlin testified unequivocally that she was sure the person who robbed her was the defendant. Even though the perpetrator of this offense was wearing a mask, Ms. Laughlin was positive that she was able to identify the defendant by his build, his eyes, his voice, and the fact that he called her by name. Ms. Laughlin stated she had known the defendant most of her life and had seen him often because he was a regular customer.
The defense presented evidence from Wilbert Thibodeaux, who testified he had been on his porch all morning on August 15,1985, and he had not seen the defendant leave his house prior to 1:00 p.m. Thibo-deaux’s testimony was refuted by another defense witness, Phyllis Pitre, who lived with the defendant. Ms. Pitre stated that the defendant left the house at 11:00 a.m. to bring a friend home.
Defendant also presented testimony from Michael Fontenot which indicated that he picked defendant up near 1:00 p.m., and while he and the defendant were together, they did not go near the crime site. The jury may have concluded that the defendant committed the armed robbery before Fontenot arrived. Moreover, the jury may also not have believed Mr. Fontenot. In any event, a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could believe Ms. Laugh-lin’s positive identification, and conclude beyond a reasonable doubt that the defendant robbed Manuel’s Quick Stop.
Defendant asserts that various inconsistencies in the testimony of the state’s witnesses, and also the fact that witnesses discussed the crimes with each other prior to defendant’s arrest and trial, rendered their testimonies and identifications suspect. As examples of “inconsistencies” defendant points out that Angela Guillory said she was positive of her identification of defendant, but the attending defense counsel, Ed Lopez, said she was hesitant. Defendant also points out that Assistant Police Chief Smith stated during a preliminary proceeding, that Angela Guillory told him that she saw the defendant enter the store, but that at trial Guillory testified she saw the defendant attempt to enter the store but draw back when Debord exited to throw away trash. These alleged inconsistencies are trivial and inconsequential and certainly do not render the verdict suspect. Additionally, it is true that some of the witnesses discussed the July 12,1985 crime with each other. It is clear however, that the main identifying witnesses to the crimes, especially Debord, Guillory and Laughlin, had no doubt that the defendant was the perpetrator, and identified him as such as a result of their recollections from the time the incidents occurred.
Defendant also seeks relief from the trial court’s denial of his request for a new trial. Under La.C.Cr.P. art. 851(1), a defendant is entitled to a new trial whenever the verdict is contrary to the law and the evidence. The trial court denied defendant’s motion. Appellate courts may not review the refusal of a request for a new trial except for error of law. State v. Collins, 306 So.2d 662 (La.1975); State v. Henderson, 444 So.2d 751 (La.App. 4th Cir.1984); State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied, 463 So. 2d 1317 (La.1985). No error of law occurred here.
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 2:
By this assignment of error the defendant argues that the trial court erred in denying his motion to suppress a lineup identification. Defendant argues that *665 some of the witnesses knew him and discussed his identification among themselves prior to the lineup. The defense also complains that witness Sandra Fay Rider was told by someone that one of the lineup participants had shaved off his beard, and that several witnesses testified at trial that they knew the robber by his eyes, all allegedly supporting the argument that this lineup as unreliable and unduly suggestive.
The key factor in determining the admissibility of identification testimony is whether under the totality of circumstances the identification was reliable. Lowenfield v. Phelps, 817 F.2d 285 (5th Cir.1987) stay granted — U.S. —, 107 S.Ct. 3221, 96 L.Ed.2d 708, cert. granted in part — U.S. —, 107 S.Ct. 3227, 97 L.Ed. 734 Aff'd. 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed. 2d 568 (1988).
The burden of proof is on the defendant to prove that the identification process was so suggestive that there was a likelihood of misidentification, and the out of court identification must be suppressed. State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987); State v. Mims, 501 So.2d 962 (La.App. 2nd Cir.1987).
Factors to be considered in determining the reliability of an identification are: the witnesses’ opportunity to view the suspect during the crime; the degree of attention paid; the accuracy of prior descriptions; the level of witnesses’ certainty at the identification; and the length of time between the crime and the identification. State v. Cotton, 511 So.2d 1207 (La.App. 2nd Cir.1987); State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986); State v. Davis, 385 So.2d 193 (La.1980).
The instant case involves an out of court lineup identification by three witnesses, who positively identified the defendant as being involved in three robberies.[2] William Debord and Angela Guillory identified the defendant as the man involved in the July 12, 1985 robberies at Hebert’s Conoco. Sheila Laughlin identified the defendant as the perpetrator of the August 15, 1985 robbery of Manuel’s Quick Stop.
At the hearing on the motion to suppress, William Debord testified that he was carrying out boxes when he noticed the defendant standing by the bathroom door, with his face uncovered. Debord testified he looked right at the defendant for a minute or two in order to determine whether he knew him or not. Debord dumped his boxes and when he turned around witnessed the defendant entering the store. Debord entered the store and was confronted by a masked gunman. Debord knew it had to be the man he saw outside the store because he witnessed the man going into the store, and no one else was in the store who was not there previously. At the lineup William Debord positively identified the defendant as the person who robbed Hebert’s Conoco on July 12, 1985. Debord testified that neither the police, nor any other witness, suggested whom he should pick at the lineup.
Angela Guillory testified that she was sitting outside Hebert’s Conoco in her car on July 12, 1985. Ms. Guillory testified that she saw the defendant near the bathroom door acting suspiciously. According to Guillory the defendant started pulling something out of his pants and then began to walk into the store, but drew back when Debord came out of the store carrying boxes. Guillory left and did not learn of the robbery until the next day. During this incident Ms. Guillory got a good look at the defendant. Ms. Guillory was in her car just a few feet away and watched the defendant for five to ten minutes. Even though this crime occurred at night, Guillo-ry and Debord were able to see well because the area around Hebert’s Conoco was well lighted. Guillory testified that no one suggested to her who to select at the lineup, and she positively identified the defendant as the man she saw outside Hebert’s Conoco on July 12, 1985.
Sheila Laughlin was the victim of the Manuel’s Quick Stop robbery on August 15, *666 1985. Ms. Laughlin testified that she had no trouble determining that the defendant was the robber, even though he wore a mask, because she had known him most of her life and recognized his voice. Ms. Laughlin admitted knowing the witnesses to the first robbery, but testified that she did not tell them who to select at the lineup.
Detective Ronnie Valenta testified that he was with the witnesses as they waited together to view the lineup. Detective Va-lenta testified that the witnesses were not allowed to discuss the identification among themselves. The witnesses were brought into a separate room, one at a time, to view the lineup participants, and given a form on which to write their selection. Detective Smith, who was in the room where the witnesses made the identifications, testified that no one influenced the witnesses in their identifications.
Despite the fact that these witnesses knew each other and could possibly have discussed these robberies, the record is clear that the identifications in this case were reliable. Debord and Guillory viewed the defendant for a significant period of time during which defendant occupied their full attention. While Ms. Laughlin saw defendant wearing a mask, she had known him for years and recognized his voice and build. All three witnesses were positive of their identification. The lineup was held August 20,1985, a little more than a month after the first robbery and just five days after the second robbery. It is unlikely that memories of these events would fade in this short a period of time.
We find therefore, that the out of court identifications in this case are reliable and not unduly suggestive, and that the trial court did not err in finding the lineup identifications admissible.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5:
By this assignment of error defendant contends that the trial court erred in sentencing him to an unconstitutional sentence. In his brief to this court, defendant withdrew this assignment.
ASSIGNMENT OF ERROR NO. 6:
Defendant argues that his Sixth Amendment Rights were violated because his counsel was constitutionally ineffective. In support of this contention defendant argues that the record in his case discloses several inconsistent and contradictory statements by the state’s witnesses which defense counsel failed to take advantage of.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (La.1984), the United States Supreme Court articulated the most recent test for determining whether counsel has been ineffective. The Supreme Court stated:
“A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the performance prejudiced the defendant. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.”
According to Louisiana jurisprudence, for a defendant to prove a claim of ineffective representation, he must demonstrate that counsel did not meet the level of competency “normally demanded” in criminal cases. State v. Boyd, 503 So.2d 747 (La.App. 3rd Cir.1987) remanded, 525 So.2d 42 (La.App. 3rd Cir.1988). An adequate criminal defense must be based on informed professional deliberation. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); State v. Boyd, supra. Effective assistance of counsel does not mean errorless counsel, or counsel which may be judged ineffective by mere hindsight, but counsel reasonably likely to render and actually rendering reasonably effective assistance. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Seiss, 428 So.2d 444 (La.1983).
*667 In State ex rel. Graffagnino, supra, the court set forth a two pronged test. The first inquiry is whether defense counsel violated some duty to the client. The second inquiry is whether the violation, if any, prejudiced the client in the defense of his case.
A review of the record reveals that defendant’s claim is without merit. Defendant’s counsel, Julie Cullen, filed pre-trial motions to compel production of police reports, to reduce bond, and to recuse the judge.
Ms. Cullen attempted to suppress the victim identifications at a hearing on the motion to suppress. At trial Ms. Cullen attempted to present witnesses to show defendant was either at home, or with Michael Fontenot, during the August 15,1985 robbery. Ms. Cullen also presented testimony of police officers that defendant was cooperative before his arrest when police were searching for a suspect after the first robbery, and that he flagged down police when he heard they were looking for him on August 15, 1985, the day of the second robbery. She asserted that this evidence supported the position that her client was not involved in these crimes. Ms. Cullen cross-examined all the state’s witnesses and brought out points supportive of her client’s case, including the fact that several of the witnesses knew each other and had discussed the July 12, 1985 robberies.
We find that the defendant has failed to present any evidence which would reflect that defense counsel breached her duty to her client.
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence of the defendant, Kenneth Courville, are affirmed.
AFFIRMED.

. The taking of Mr. Schoeffler’s wallet is the second armed robbery which occurred on July 12, 1985 for which the defendant was convicted.

. A third potential witness to the July 12, 1985 robberies, Sandra Rider, was unable to identify the defendant as the perpetrator. Ms. Rider had driven up to Hebert’s Conoco as the robber was fleeing. The robber turned and shot at her and her companions.