646 So.2d 1037 (1994)
STATE of Louisiana
v.
Gregory SLANG.
No. 94-KA-332.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
*1038 John M. Mamoulides, Dist. Atty., Robert Grant, Dorothy A. Pendergast, Leigh Ann Wall, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Staff Appellate Counsel, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, C.J., and GAUDIN and DUFRESNE, JJ.
KLIEBERT, Chief Judge.
Defendant, Gregory Slang, appeals his conviction and sentence following a jury verdict in which he was found guilty of attempted second degree murder and armed robbery of William Hess. The trial court found defendant to be a third felony offender and sentenced him to 120 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on the armed robbery conviction. On the attempted second degree murder charge, defendant was sentenced to a concurrent fifty year sentence at hard labor. He was given credit for time served.
On appeal, defendant contends the trial court committed the following errors:
1. The trial court committed reversible error by charging the jury that it could convict appellant of attempted second degree murder if it found that appellant had no intent to kill.
2. The evidence was insufficient to support the verdict of guilty of attempted second degree murder, there being no evidence of a specific intent to kill.
3. The trial court imposed an excessive sentence.
4. Any and all errors patent on the face of the record.
For the following reasons, we find the assignments of error have no merit and affirm defendant's convictions and sentences.
William Hess, a taxicab operator, was the victim of an attempted murder and armed robbery after retrieving a passenger at the Pinnacle Motel, a Gretna motel located at 91 Westbank Expressway. The victim testified that on September 29, 1992, at approximately 1:30 a.m., he was dispatched to the Pinnacle Motel, Room 123. Although the victim noted that the area was well lit, he entered the motel parking lot with his headlights on and proceeded toward Room 123, a first floor room adjacent to a breezeway. An individual, later identified by the victim as the defendant, was standing near the breezeway. The defendant walked in front of the vehicle and *1039 approached the driver's side window. The victim testified that he rolled down the window and asked the defendant if he was from Room 123. After acknowledging that he was from Room 123, the defendant again walked around the car and entered on the rear passenger side. At that time, the victim turned on the interior car light in order to record his trip. While the vehicle remained stationary, the victim asked the defendant for his destination. The defendant responded "6117 Marrero Road," a nonexistent address according to the victim. The victim testified that he immediately became suspicious and once again asked the defendant for a destination. The defendant repeated, "6117 Marrero Road." The victim turned the interior light off and put the vehicle in motion. He slowly exited the motel parking lot by turning left onto Franklin Avenue. While turning onto Franklin, the victim turned and faced his passenger and again asked for his destination. The victim testified that the defendant, "in one motion," pulled a pistol, demanded that the victim relinquish his money, and fired a shot. The victim stated that he instantly collapsed to the seat. Although the victim was not struck, he sustained powder burns on the right side of his face. Further, as a bullet shattered the front, driver's side window, pieces of glass settled in the victim's hair, ears and eyes. He further recalled the defendant reaching into his pocket and removing $40.00. Soon thereafter, the victim radioed the taxicab dispatcher who, in turn, notified the Gretna Police.
At trial, the defendant took the witness stand on his own behalf. He testified that on September 28, 1992, at approximately 9:30 p.m., he left his residence to visit his sick grandmother. The defendant claimed that after a brief visit with his grandmother, a friend gave him a ride home. The defendant further stated that he remained at home for the rest of the evening and arose, on the morning of September 29th, at approximately 11:00 a.m. The defendant denied any involvement in the Pinnacle Motel incident.
In the first assignment of error, the defendant contends the trial court erroneously instructed the jury on the standard by which it could convict him of attempted second degree murder. However, the merits of this alleged error are not reviewable on appeal because defendant failed to object to the jury instruction at trial. LSA-C.Cr.P. arts. 841 and 801; State v. Belgard, 410 So.2d 720 (La.1982). Moreover, the plain error rule is not applicable as a review of the jury charge shows the trial court properly instructed the jury on the charge of attempted second degree murder.
In the second assignment of error, defendant contends the evidence was insufficient to support a conviction of attempted second degree murder because there was no evidence of a specific intent to kill. Second degree murder is defined by LSA-R.S. 14:30.1 as follows:
30.1. Second degree murder
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
An attempt to commit a crime is defined by LSA-R.S. 14:27(A) as follows:
27. Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In assessing the sufficiency of evidence to support a conviction, we must determine whether, reviewing the facts in the light most favorable to the prosecution, any rational trier of fact, could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To support a *1040 conviction of attempted second degree murder, the State must prove that the defendant tried to (1) kill a human being, (2) when he had the specific intent to do so. LSA-R.S. 14:30.1; 14:27(A); State v. Tatum, 506 So.2d 584, 591 (La.App. 4th Cir.1987). Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). As it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Edge, 504 So.2d 1169 (La.App. 5th Cir.1987); writ denied, 507 So.2d 226 (La. 1987). Furthermore, the determination of whether the requisite intent is present in a criminal case is for the trier of fact, and review of the correctness of this determination is to be guided by the Jackson standard. State v. Leeming, 612 So.2d 308, 313 (La. App. 5th Cir.1992), writ denied, 616 So.2d 681 (La.1993) (citing State v. Huizar, 414 So.2d 741 (La.1982).
Specific intent in this case is easily inferred from the fact that the defendant, according to the positive identification and testimony of the victim, pointed the gun at close range directly at the victim and fired. State v. Noble, 425 So.2d 734 (La.1983); State v. Boyer, 406 So.2d 143 (La.1981); Tatum, 506 So.2d at 584.
Viewing the evidence in the light most favorable to the prosecution, we conclude that there is sufficient evidence of defendant's specific intent to kill the victim and thus, sufficient evidence to support a conviction for attempted second degree murder.
In the third assignment of error, defendant contends that his concurrent 120 year sentence for armed robbery and 50 year sentence for attempted second degree murder is excessive. He argues the trial court impermissibly deviated from the sentencing ranges as established by the Louisiana Sentencing Guidelines.
As a third felony offender, defendant was subject to a sentencing range for armed robbery from a minimum of 66 years imprisonment to a maximum of 198 years imprisonment. LSA-R.S. 15:529.1(A)(2)(a), LSA-R.S. 14:64. The punishment for attempted second degree murder is imprisonment at hard labor for not more than 50 years. LSA-R.S. 14:27(D)(1), LSA-R.S. 14:30.1.
In sentencing the defendant, the record reflects the trial court considered the sentencing guidelines and articulated valid reasons, supported by the record, why he determined a deviation from the guidelines was required for this defendant.
In State v. Jones, 559 So.2d 492 (La.App. 5th Cir.1990), writ denied, 566 So.2d 981 (La.1990), this Court set forth the constitutional jurisprudence regarding excessive sentences:
The Courts are prohibited from imposing cruel, excessive, or unusual punishment by article I, Section 20 of the Louisiana Constitution of 1974. Sentences which are "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering" are excessive. State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Studivant, 531 So.2d 539 (La.App. 5th Cir.1988). Even sentences which are within statutory limits may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tyler, 524 So.2d 239 (La.App. 5th Cir. 1988).
In reviewing a sentence for excessiveness, this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion. State v. Davis, 449 So.2d 452 (La.1984); State v. Lynch, 512 So.2d 1214 (La.App. 5th Cir.1987). This Court should further consider three factors in reviewing a judge's sentencing discretion 1) the nature of the crime; 2) the nature and background of *1041 the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Smith, 520 So.2d 1252 (La.App. 5th Cir.1988), writ denied, 523 So.2d 1320 (La.1988).
A trial judge has wide discretion in determining and imposing sentences which we shall not overturn absent an abuse of discretion. Here, defendant committed a violent, unprovoked attack using a firearm. This, coupled with his extensive criminal history and inability to lead a life free from crime supports the trial court's concurrent 120 year sentence for armed robbery and 50 year sentence for attempted second degree murder. Accordingly, we find the sentences imposed are not excessive.
We have reviewed the record for errors patent and find none.
Accordingly, defendant's convictions and sentences are affirmed.
AFFIRMED.