836 So.2d 601 (2002)
STATE of Louisiana
v.
Edmond F. STACKER.
No. 02-KA-768.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*604 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Appellee, State Of Louisiana.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, for Appellant, Edmond F. Stacker.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
On December 5, 2001, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Edmond Stacker, with attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1. Defendant pled not guilty on December 6, 2001.
The matter proceeded to trial on April 8, 2002. After two days of testimony, the jury unanimously found the defendant guilty as charged. Defendant's motion for new trial was heard and denied on April 26, 2002. That day, the defendant waived the statutory sentencing delay. The trial court then sentenced defendant to 50 years at hard labor without benefit of probation, parole or suspension of sentence, but with credit for time served.
Defendant's written motion to reconsider sentence was denied. Defendant filed a timely appeal.

Facts
In early October of 2001, the defendant "put his hands" on his neighbor, Dina Noil, during a discussion about the defendant's niece. On October 5, 2001, Dina Noil told her brother, Cornelius Singleton, about the incident.
That evening, while Singleton was visiting his sister, he approached the defendant to speak with him about the incident. During that conversation, the defendant became "rowdy," pulled out a pistol, and aimed it at Singleton. Although the defendant pulled the trigger, the gun did not fire properly and no bullet was released from the chamber.
The defendant then returned to his apartment to fix the gun; he fired two shots inside of his apartment. Immediately, he exited his apartment across the alley from Dina's apartment, with the gun in hand. He ran toward Singleton, who was standing in the alleyway. When the defendant attempted to strike Singleton in the face with his left hand, Singleton blocked the blow. The defendant, who was holding the gun in his right hand, then shot Singleton in the mouth.
After being shot, Singleton ran toward his sister's apartment, with the defendant chasing him and shooting at him. After he entered the apartment, he ran upstairs. Dina Noil, who was still outside of her apartment in the alleyway, begged the defendant not to fire at the house because her children were inside. The defendant, however, fired two shots into the apartment. The Noils discovered one of the bullets on the floor of their home a few days later.
Robert Reddman, one of the emergency medical technicians who responded to the scene, found Singleton bleeding from the mouth. After examining Singleton, Reddman found a bullet hole through the victim's tongue and the roof of his mouth. X-rays later revealed that the bullet was lodged in his neck. According to the victim, *605 the bullet was still lodged in his neck at the time of trial.

Discussion
In his first assignment of error, the defendant argues that the State failed to provide sufficient evidence to support the conviction for attempted second degree murder.[1] He contends that the witnesses' statements at the time of the initial complaint varied greatly from the testimony at trial. He further contends that the statements of the witnesses at trial were inconsistent when compared to each other. Defendant further argues that the testimony of Cornelius Singleton, as to the attempted blow blocked by Singleton, indicates that attempted manslaughter is a more appropriate verdict.
Defendant initially contends that Dina and Irvin Noil's statements to the police were inconsistent with their testimony at trial. First, Irvin Noil did not testify at trial so his trial testimony could not have been inconsistent with his pre-trial statement. More importantly, Dina Noil's pre-trial statement was not introduced at trial and, as such, does not constitute part of the record in this case. We are precluded from considering evidence, which is not part of the record. State v. Pertuit, 95-935 (La.App. 5 Cir. 3/13/96), 673 So.2d 1055, 1057. Defendant also contends that witness, Dina Noil, and victim, Cornelius Singleton, contradicted each other during their trial testimony. We have reviewed their testimony and disagree with defendant's characterization.
In addition, defendant claims that attempted manslaughter is a "more appropriate" verdict than attempted second degree murder. The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560. A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35.
A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure the Jackson standard of review. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
To support a conviction for attempted second degree murder, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that the defendant committed an overt act in furtherance of that goal. LSA-R.S. 14:27 and 14:30.1; State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but attempted first or second degree murder requires a specific intent to kill. Id.
Specific intent is "that state of mind which exists when the circumstances *606 indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Harrell, supra. Because specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances and actions of the defendant. Id. Specific intent to kill may be inferred from a defendant's relentless pursuit of the victim through a neighborhood with a dangerous weapon. State v. Armant, 97-1256 (La. App. 5 Cir. 5/27/98), 719 So.2d 510, 517, writs denied, 98-1884 (La.11/20/98), 729 So.2d 3, and 98-1909 (La.11/20/98), 729 So.2d 4. Specific intent to kill may be inferred from the extent and severity of the victim's injuries. Harrell, supra.
In State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, this Court upheld defendant's conviction for attempted second degree murder by finding that specific intent to kill could be inferred from the fact that the defendant pointed the gun at close range directly at the victim's head and fired. In Slang, the defendant entered a taxicab and told the operator to drive to a non-existent address. The defendant, during the course of the cab ride, pulled a pistol, demanded that the victim relinquish his money, and fired a shot at the victim's head.
In State v. Armant, supra, the defendant was convicted of attempted second degree murder. In Armant, this Court concluded that the State proved that the defendant had specific intent to kill based on the defendant's relentless pursuit of the victim through the neighborhood with a barbeque fork. The victim suffered several stab wounds which required sutures and an injury to her eye which showed that the defendant used a great deal of force in attacking her.
Similarly to Slang, the defendant in this case aimed and pointed a gun directly at the victim on more than one occasion. First, the defendant aimed the gun at Singleton's face and pulled the trigger but the bullet failed to exit the chamber. After that, defendant returned to his apartment and fired the gun twice. Immediately, defendant ran out of his apartment toward Singleton, attempted to strike Singleton with his left hand, and shot Singleton in the mouth.
When Singleton tried to flee into his sister's apartment, the defendant, as in Armant, pursued Singleton and fired twice into the Noils' apartment. Further, the EMT testified to the severity of Singleton's injuries. Based on the testimony presented at trial, we find that, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could, and did, find, beyond a reasonable doubt, that the defendant had the specific intent to kill Cornelius Singleton and that he committed an overt act in furtherance of that goal. This argument lacks merit.
In his second assignment of error, defendant argues that the sentence imposed is excessive. He contends that the 50-year sentence at hard labor is constitutionally excessive and that the trial court erred in failing to comply with the requirements of La.C.Cr.P. art. 894.1. He further argues that the trial court failed to give any factors to support the maximum sentence and that there is no evidence that the sentence was tailored to him. Defendant contends that the trial court erred in failing to consider the mitigating factors that defendant had no criminal background and is a relatively young man.
La.C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider the legality, under statutory sentencing guidelines, of a sentence within 30 days of sentencing. The motion be made orally at the time of sentencing or in writing thereafter, and must set forth the specific grounds on *607 which the motion is based. The failure to state the specific grounds upon which the motion is based, precludes the defendant from raising the issue on appeal. State v. Knightshed, 00-1410 (La.App. 5 Cir. 3/28/01), 783 So.2d 501, 504.
In State v. Battie, 98-1296 (La. App. 5 Cir. 5/19/99), 735 So.2d 844, 855, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980, the defendant contended that the trial court erred by failing to state for the record the considerations taken into account and the factual basis for imposing sentence as required by La.C.Cr.P. art. 894.1(C). This Court noted that the defendant did not raise the issue of failing to comply with La.C.Cr.P. art. 894.1(C) in either her motion to reconsider sentence or her hearing on the same. Id. This Court held that defendant's failure to raise the issue in the trial court precluded her from raising the issue on appeal. Id.
In this case, the defendant did not raise failure to comply with La.C.Cr.P. art. 894.1 in his written motion to reconsider sentence or at the hearing on the motion to reconsider sentence. Therefore, defendant is precluded from raising this issue on appeal. However, we will still review defendant's sentence for constitutional excessiveness. Knightshed, 783 So.2d at 504.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. VIII; La. Const., Art. I, § 20. Even a sentence within the prescribed statutory limit may violate a defendant's constitutional right against excessive punishment. State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95. In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Snyder, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082.
Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95. However, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95. This Court should further consider three factors in reviewing a judge's sentencing discretion 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Slang, 646 So.2d at 1041.
A sentence for attempted second degree murder ranges from ten to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27 and 14:30.1. The trial judge in the instant case sentenced the defendant to the maximum of 50 years without giving any reasons for sentence or referencing a pre-sentence investigation. Therefore, this Court must examine whether the record supports the sentence imposed and examine sentences imposed for similar crimes.
In State v. Camese, 00-1943 (La.App. 4 Cir. 7/23/01), 791 So.2d 173, writ denied, 01-2324 (La.8/30/02), 823 So.2d 937, the defendant was convicted of attempted second degree murder and armed robbery. The trial court sentenced the defendant to serve 50 years at hard labor on the attempted second degree murder charge and 49 years on the armed robbery charge. The defendant in Camese had a prior criminal record although the Court did not specify those prior convictions. In *608 Camese, the defendant approached the victim, who in fact knew him, put a gun to his head, and took his car as the victim was trying to enter his own residence. After the victim gave him the car, the defendant shot him in the head, leaving a bullet in his jaw. The victim survived the attack. The Fourth Circuit found that the sentences imposed were not excessive.
In State v. Pyke, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713, the Third Circuit affirmed the defendant's sentence of 50 years at hard labor on his conviction for attempted second degree murder. The defendant shot the victim in the back as the victim was lying on the ground after being beaten by a group of individuals. The court noted that the victim has a nine millimeter bullet lodged in his back and that he will carry it to his grave. The court noted that defendant was classified as a first felony offender, although the pre-sentence investigation report indicated that the defendant had prior crimes against the person as a juvenile, and as an adult.
In State v. Meads, 98-1388 (La.App. 1 Cir. 4/1/99), 734 So.2d 792, writ denied, 99-1328 (La.10/15/99), 748 So.2d 465, the First Circuit upheld a 50-year sentence of a defendant with no prior criminal record for attempted second degree murder. In Meads, the defendant, the victim's former boyfriend, entered a hospital room where the victim's son was hospitalized. The defendant pulled a gun and struck the victim several times. The victim broke free and ran into the hallway at which point the defendant dragged her back into the room and shot her three times. He then pointed the gun at the victim's head, but the gun jammed when the trigger was pulled. The victim was thereafter able to break free and fled down the hall. The First Circuit, in upholding the sentence, noted the trial court's reasons for sentencing in which the trial judge considered that the incident took place in the presence of a child, multiple gun shots were fired, the intent of defendant was clear, the defendant endangered numerous individuals, and that the defendant had pending charges of aggravated battery and illegal use of a weapon.
Similar to the cases above, the defendant used a firearm to shoot the victim at relatively close range, which, in the present case, resulted in a bullet-hole through the victim's tongue and a bullet lodged in his neck. Defendant then pursued the victim as the victim attempted to flee into his sister's apartment, firing two shots into the apartment where the victim's two nephews were present. Like Meads, this defendant was a first felony offender, fired multiple shots at the victim, and endangered the lives of others, including children, in the process.
While we note that the trial judge in the instant case did not give any reasons for sentencing, we do not find that he abused his wide discretion in determining a sentence. Furthermore, the record supports the imposed sentence of 50 years. This assignment of error lacks merit.
Lastly, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920. We have found an error patent, which requires remand. The transcript of the sentencing hearing reflects that the trial judge did not adequately advise the defendant of the commencement date for the prescriptive period for filing post-conviction relief pursuant to La. C.Cr.P. art. 930.8. We remand the matter for the district court to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.
*609 Accordingly, the defendant's conviction and sentence are affirmed. The case is remanded with instructions to the trial court to send written notice to defendant of the provisions of La.C.Cr.P. art. 930.8.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The record does not show that defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. However, such failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Hicks, 01-1064 (La. App. 5 Cir. 4/10/02), 817 So.2d 192, 202.