658 So.2d 225 (1995)
STATE of Louisiana, Appellee,
v.
Ollie Leslie GOLSON, III, Appellant.
No. 27083-KA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 1995.
*227 Herman L. Lawson, Mansfield, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, William R. Jones, Dist. Atty., Coushatta, for appellee.
Before MARVIN, NORRIS and WILLIAMS, JJ.
WILLIAMS, Judge.
The defendant, Ollie Leslie Golson, III, was convicted of attempted second degree murder of his wife, Patricia Diane Golson, a violation of LSA-R.S. 14:27 and 14:30.1. The trial court imposed a sentence of 40 years at hard labor. The defendant appeals his conviction and sentence. We affirm.

FACTS
It is undisputed that the defendant shot his wife three times on March 21, 1993, at their residence in Red River Parish. However, the defendant's account of the shooting is different from that of the victim.
According to Mrs. Golson, she and the defendant were having marital problems. She testified that about a month before the shooting, she began sleeping in a separate bedroom. During the week prior to the shooting, she and the defendant had argued after she told him that she wanted a divorce. The day before the shooting, they argued again when she told the defendant that she had made arrangements to move out and take the children with her. On the day of the shooting, during another discussion about divorce, the defendant told her that there was no way she would get out of the house or *228 that she would get his children out of the house.
At about 7:00 p.m. on the day of the shooting, Mrs. Golson went through the defendant's bedroom to the master bathroom. As she was leaving his bedroom, the defendant grabbed her and pulled her on the bed, saying that they needed to talk. He then forced her to have sex with him, laughing as she tried to push him away. Afterward, Mrs. Golson grabbed a pair of fingernail clippers and began stabbing at the waterbed mattress. She testified that she was upset and was trying to hurt the defendant by damaging his waterbed, which was "his pride and joy."
Unable to puncture the mattress, Mrs. Golson threw the clippers on the floor and began to leave the room. As she was leaving, she saw the defendant standing on the other side of the king size bed, at his dresser, holding a gun in his hand. Mrs. Golson testified that they normally kept the gun in her dresser on the other side of the room. The defendant then shot her in the mouth. She fell to the floor. The defendant walked to the foot of the bed and aimed the gun at her head. Mrs. Golson raised her right arm to protect her head and the defendant shot her again. The second bullet pierced her arm and entered her chest. Mrs. Golson testified that at this point she heard the couple's four-year-old daughter screaming and pleading to the defendant not to kill her mother. The defendant then shot Mrs. Golson a third time. The gun was aimed at her head, but Mrs. Golson raised her left arm and the third bullet struck her in the arm. She noticed that the defendant had cocked the gun again and saw him dragging their daughter from the room. Mrs. Golson then tried to pull herself up on the bed but passed out during the effort. When she regained consciousness, the defendant was in the room. She asked him to take her to the hospital in Coushatta, but the defendant replied that he did not know where it was. Mrs. Golson lost consciousness again and awoke to find herself in the bed of a truck with light rain falling on her. She asked the defendant to take her to the Griffith's, a neighbor's, house.
According to the defendant, their marriage was "very pleasant" until about a year before the shooting. The defendant admitted that Mrs. Golson had been sleeping in the other bedroom, but said she had done so for only a week prior to the shooting. He denied that there had been any discussion of divorce during the week before the shooting.
On the day of the shooting, the defendant was attempting to take a nap in his bedroom. According to the defendant, Mrs. Golson woke him several times and then left the room. The defendant considered this strange behavior and after the third or fourth time she entered the bedroom, he looked for a gun that they normally kept in the bedroom. He found the gun in Mrs. Golson's dresser and moved it to his dresser. Mrs. Golson then came into the room, looked for the gun, and told him that she was going to kill him.
The defendant testified that later he was lying face down on the bed when Mrs. Golson returned to the room and began throwing things at him. According to the defendant, she threw a small bottle of wine at him, hitting him in the head over the eye. Mrs. Golson asked him to leave the house and to take whatever he wanted with him. He refused to leave.
Later, the defendant testified, Mrs. Golson returned to his room and wanted to have sex. The defendant had sex with her, assuming that she was attempting to reconcile with him. Afterward, he testified, Mrs. Golson told him that she was going to have him arrested for rape. The defendant stated that he pulled the gun and told her to leave the room, which she did. However, according to the defendant, she returned a short time later, told him that she had a gun in the house, and that she was going to provoke him until he attacked her and then she was going to kill him. Mrs. Golson left the room once again.
The defendant testified that when Mrs. Golson returned to the room the final time, she had what appeared to be a knife in her hand. She began making stabbing motions across the bed. He pulled the gun and told her to stop. She kept coming across the bed, *229 stabbing at him; so, shooting from the hip without aiming, he began shooting her to stop her from stabbing him and to prevent her from getting a gun. After the first shot, Mrs. Golson started toward the door. He shot her a second and third time as she was attempting to leave the room. The defendant testified that after the shooting, Mrs. Golson "walked herself" to the truck and, at her request, he drove her to the Griffith's house.
When the defendant arrived at the Griffith's, Ray Griffith called for an ambulance and the sheriff's office. Deputy Warren Perkins of the Red River Parish Sheriff's Office arrived at the Griffith's and instructed another deputy to place the defendant under arrest and advise him of his rights. The defendant told Perkins that the gun was in the console of the truck. Perkins retrieved the gun from the truck and removed three spent cartridges. He testified that he smelled burned powder on the gun, though it was not extremely fresh.
At the scene of the crime, Deputy Perkins found two large pools of blood on the floor near the foot of the waterbed as well as what he thought to be teeth fragments. He also found a pair of fingernail clippers near the blood, toward the door. Perkins testified that he found no weapons in the bedroom where the shooting occurred. However, Deputy Tracy Scott testified that there were "quite a few weapons" in the closet of the bedroom. Deputy Kenneth Mangham testified that the bedroom in which the shooting occurred was the only room in the house in which firearms were found. Mangham indicated that in his investigation he found a small, unbroken bottle of wine on the bed. He also testified that the defendant had a small cut over his right eye.

DISCUSSION

ASSIGNMENT OF ERROR NO. 5: Sufficiency of the Evidence
By this assignment, the defendant contends that the state failed to prove beyond a reasonable doubt that he attempted to murder his wife. He argues that there is insufficient evidence to prove that he had the specific intent to kill and to prove that he was not acting in self-defense at the time of the shooting. In the alternative, the defendant argues that the evidence is only sufficient to prove attempted manslaughter.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
Second degree murder is defined, in pertinent part, as "... the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:30.1. Attempt is defined, in pertinent part, as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
LSA-R.S. 14:27(A). Although second degree murder includes a specific intent to inflict great bodily harm, a conviction for attempted second degree murder requires a finding that the defendant had the specific intent to kill. State v. Butler, 322 So.2d 189 (La.1975); State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La. 1987). Therefore, in the instant case, the state had the burden of proving that the defendant had the specific intent to kill his wife and that he committed an act for the purpose of accomplishing that goal. There is no dispute that the defendant shot his wife three times, including once in the head and once in the chest. The defendant argues, however, that he did not have the specific intent to kill. He claims he only intended to stop her from stabbing him with a knife he thought she had. He contends that he was justified in shooting her.
*230 Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have concluded that the defendant possessed the specific intent to kill his wife. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94, (La. App. 2d Cir.1993); LSA-R.S. 14:10(1). Specific intent need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La. 1982); State v. Doby, 540 So.2d 1008 (La. App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
The record reveals that the defendant pointed a .38 caliber handgun at the victim's head and shot her three times. The last two shots were fired at close range. Two of the bullets hit the victim in the arms as she raised them to protect herself. In State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La. 1985), the court found that the defendant's act of shooting the victim at least five times, two bullets hitting the back of the victim's head and several striking her hands, was evidence of a specific intent to kill. See also State v. Procell, 365 So.2d 484 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). In the present case, the defendant's act of pointing a gun at the victim while firing it three times is evidence from which a reasonable person could conclude that he had a specific intent to kill.
In order for the defendant's actions to be justified, the force used must be reasonable under the circumstances and apparently necessary to prevent an imminent assault. State v. Landry, 381 So.2d 462 (La. 1980); LSA-R.S. 14:19. In the instant case, the defendant used deadly force. He pointed the gun at the victim's head and shot three times. The first time he shot, the victim was across the room with a king size bed between them. The second and third time he shot, the victim was either leaving the room or on the floor. Under the circumstances, a jury reasonably could have concluded that the defendant used unreasonable force. This finding is supported by the evidence.
Additionally, the force used by the defendant was not apparently necessary to prevent an imminent assault. The defendant argues in brief that the fingernail clippers used by the victim to stab at the waterbed can be extended to appear to be a knife. However, even if the victim had the fingernail clippers extended in her hand to look like a knife, it would be a very small knife. A reasonable person could have concluded that the defendant, who at the time of the offense was 6 feet, 2 inches tall and weighed 215 pounds, could have overcome his wife's advances without resorting to the use of a gun and that the defendant was not in danger of an imminent assault. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the force used by the defendant was unreasonable under the circumstances and was not apparently necessary to prevent an imminent assault.
Finally, the defendant argues that he should be found guilty of no more than attempted manslaughter. Manslaughter is defined as a homicide which would be murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. LSA-R.S. 14:31. "Sudden passion" and "heat of blood" are mitigating factors in the nature of a defense. State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993); State v. Lombard, 486 So.2d 106 (La.1986). A defendant is required to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" for a verdict of manslaughter to be appropriate. McCray, supra; Lombard, supra.
The defendant, in his brief, does not point to any particular action by the victim which would constitute provocation sufficient to deprive him of his self-control. The defendant's argument relies on the degree of credibility given to his testimony by the jury and the jury's determination of the *231 events which preceded the shooting. It is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La. 1993). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). Apparently, in the instant case, the jury chose to believe Mrs. Golson's account of the events and found that the defendant was not acting under sudden passion or heat of blood. The record supports this conclusion.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, the defendant guilty of attempted second degree murder. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 1, 2, 3, AND 4: Excessive Sentence
By these assignments, the defendant argues that the sentence imposed is excessive, that the trial court erred in finding aggravating circumstances, and that the trial court failed to consider the mitigating circumstances.
The pre-sentence investigation report indicated that the defendant was a first felony offender. The defendant's criminal record included arrests for theft (1972), criminal mischief (1974), and loud and obscene language (1974); however, the disposition of these arrests was not available. The report indicated that the defendant falls into grid cell 1-G of the sentencing guidelines, which recommends a sentence of 60 to 90 months incarceration. Attempted second degree murder provides for a statutory maximum sentence of 50 years at hard labor. LSA-R.S. 14:27(D)(1) and 14:30.1. The trial court sentenced the defendant to serve 40 years at hard labor.
The Louisiana Supreme Court has held that the Louisiana Sentencing Guidelines are advisory in nature. State v. Smith, 93-0402 (La. 07/05/94), 639 So.2d 237. However, the sentencing judge must consider the guidelines and state for the record the considerations and the factual basis for the imposed sentence. LSA-C.Cr.P. Art. 894.1; see also State v. Brown, 616 So.2d 792 (La. App. 2d Cir.1993). If the trial court considers the guidelines and imposes a sentence within the statutory range, an appellate court is limited to a traditional review of the sentence for constitutional excessiveness. Smith, supra.
At the sentencing hearing, the trial judge stated the factual basis for the instant sentence. He identified the appropriate grid cell and expressly stated that he intended to depart from the guidelines' recommended sentence. He then discussed the aggravating and mitigating factors present in this case. The record indicates that the trial court properly considered the guidelines, including the aggravating and mitigating factors listed in La.S.G. Sec. 209, in departing from the guidelines and imposing sentence.[1]
The defendant argues that the aggravating factors listed by the trial court were improperly considered. La.S.G. Sec. 209(B) lists the aggravating circumstances to be considered in imposing sentence. One aggravating circumstance is sufficient to justify an upward departure from the recommended sentence. State v. Tate, 25,765 (La. App. 2d Cir. 02/23/94), 632 So.2d 1213. The trial court considered that the defendant knowingly placed more than one person in danger of great bodily injury or death. The evidence showed that the couple's four year old daughter entered the room as the defendant was firing the gun. Thus, she was placed in danger of death or great bodily harm. This is an appropriate aggravating factor. La.S.G. Sec. 209(B)(5).
The defendant also argues that the trial court failed to consider all the mitigating *232 factors in imposing the sentence. The trial judge listed two mitigating factors which he considered in imposing the sentence. He noted that the defendant cooperated with law enforcement officers in the investigation of the crime and that the defendant possibly showed some concern for the well-being of the victim by driving her to a neighbor's residence for assistance. La.S.G. Sec. 209(C)(9), (12).
The defendant suggests that the trial court should have considered that the victim was the aggressor. La.S.G. Sec. 209(C)(1). Even if it is assumed that the facts proved that the victim was the aggressor, this factor cannot be considered a mitigating factor because it constitutes the legal defense of self-defense. LSA-R.S. 14:19. Factors which constitute a legal defense shall not be considered mitigating circumstances. La.S.G. 209(C). The defendant also argues that the trial court should have considered that there was no significant premeditation by the defendant. La.S.G. Sec. 209(C)(7). However, the facts showed that prior to the shooting, the defendant looked for the gun and moved it to a more accessible location. This action indicates a degree of premeditation. Finally, the defendant argues that the trial court should have considered the fact that the defendant has no significant criminal record. The trial judge indicated at the sentencing hearing that he considered the pre-sentence investigation report which listed the defendant's criminal record. Thus, this factor was considered by the trial court.
Since the trial judge properly considered the guidelines and stated for the record aggravating and mitigating factors he considered, this court is limited to a review of the sentence for constitutional excessiveness. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Thompson, 25,583 (La.App. 2d Cir. 01/19/94), 631 So.2d 555.
A sentence of 40 years at hard labor is not constitutionally excessive in light of the factual circumstances of this case. The defendant shot his wife in the mouth. After she fell to the floor, he approached her and shot her two more times at close range. Each shot was fired toward her head or the upper portion of her body. As the trial court stated at the sentencing hearing, were it not for the intervention of the couple's four-year-old child, the defendant probably would have succeeded in killing his wife. The trial court did not abuse its discretion in sentencing this defendant.
These assignments of error are without merit.

CONCLUSION
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] We note that some of the aggravating circumstances listed by the trial judge are not appropriate aggravating circumstances set forth in the guidelines. For example, the trial court listed as an aggravating factor that the defendant used violence in the commission of the offense. Attempted murder necessarily involves some sort of violence. Factors which constitute essential elements of the offense shall not be considered aggravating factors. La.S.G. Sec. 209(B).