| iNORRIS, Judge.
The defendant, Gary Stacy, was indicted for the second degree murders of Kenneth Loston and Latson Williams. La.R.S. 14:30.1 A(l), (2). A jury found him guilty of two counts of manslaughter; the District Court sentenced him to 10 years at hard labor on each count, to run consecutively. Stacy appealed, advancing nine assignments of error. *951 On original appeal, this court found that three of Stacy’s arguments lacked merit but that reversible error occurred in the voir dire portion of the trial.[1] We therefore reversed the convictions and remanded the case for a new trial. State v. Stacy, 27,136 (La.App.2d Cir. 10/5/95), 665 So.2d 390. On certiorari, however, the Supreme Court held that the trial judge’s restriction of voir dire examination was not error. That court reversed the appellate decree and remanded the case for consideration of the remaining assignments.[2] State v. Stacy, 96-0221 (La.10/15/96), 680 So.2d 1175. After full reconsideration, we now affirm the convictions and sentences.

Factual and procedural background

For the facts surrounding the offense and. the relevant procedural history, we incorporate by reference the facts related in our prior opinion, and also adopt as our own the statement of facts contained in the Supreme Court’s opinion.

Discussion: Motion for mistrial

By his third assignment Stacy urges the District Court erred in not granting his oral motion for mistrial when the prosecutor made a remark comparing the “crime problem” in Atlanta and Shreveport. This arose when the prosecutor was attempting to qualify Dr. Reams, an assistant coroner with specialized training in | ^Atlanta, Georgia, as an expert in forensic pathology. The prosecutor asked, “Is it just me or does Atlanta have some what of a crime problem like Shreveport does?” R.p. 1372. Defense counsel immediately moved for mistrial, urging that the implication that Shreveport has a “crime problem” was irrelevant to the case. The District Court denied the mistrial, but admonished the jury to disregard the remark. On appeal Stacy apparently concedes that grounds for mandatory mistrial were not present[3] but urges that the conduct was so prejudicial that the court was required to grant discretionary mistrial.
Discretionary mistrial is authorized when “prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]” La.C.Cr.P. art. 775. However, mistrial is a drastic remedy and warranted only when substantial prejudice will otherwise result to the defendant to deprive him of a fair trial. State v. Smith, 418 So.2d 515 (La.1982); State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989), writ denied 556 So.2d 1259 (1990). Thus when the prosecutor makes a remark that is “irrelevant or immaterial and of such a nature that it might create prejudice against the defendant,” the court shall promptly admonish the jury to disregard the remark. La.C.Cr.P. art. 771. The court may grant a mistrial if it is satisfied that the admonition will not assure the defendant a fair trial, but this is within the court’s great discretion. State v. Hall, supra.
Stacy argues that by mentioning Atlanta’s crime problem the prosecutor was invoking public sentiment and encouraging the jury to pass a plebiscite on crime, a form of argument that is improper. See State v. Deboue, 552 So.2d 355 (La.1989), and citations therein. Admittedly, the reference to a “crime problem” in Shreveport could, in a different context, be impermissible. It was not, however, used in argument, or in an inflammatory manner, but rather appeared to be a Igsomewhat awkward effort to establish Dr. Reams’s expertise by bringing out the fact that she had performed some 200 autopsies in Atlanta. On the record presented, the admonition was sufficient to prevent prejudice. The District Court did not err in denying the motion for mistrial, and this assignment lacks merit.

*952
Sufficiency of evidence

By his sixth assignment, Stacy urges the District Court erred in denying his motion for new trial, and by his seventh he challenges the denial of his motion for post verdict judgment of acquittal. The denial of a motion for new trial is subject to neither the appellate nor supervisory jurisdiction of the court of appeal except for error of law. La. C.Cr.P. art. 858. For the reasons discussed in our previous opinion, in the Supreme Court’s opinion, and elsewhere in the instant opinion, we find no error of law such as would warrant the grant of a new trial under La.C.Cr.P. art. 851.
Post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in the light most favorable to the state, does not reasonably permit a finding of guilty. La.C.Cr.P. art. 821 B. The motion thus raises the issue of legal sufficiency and incorporates the federal standard set forth in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).[4] See State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied 604 So.2d 973 (1992). The Jackson standard applies to all evidence, both direct and circumstantial. State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. Flight and attempt to avoid apprehension are circumstances indicative of awareness of guilt and the jury may infer guilt from them. State v. Fuller, 418 So.2d 591 (La.1982); State v. Bean, 582 So.2d 947 (La.App. 2d Cir.), writ denied 586 So.2d 567 (1991).
|4It is not the function of an appellate court to assess credibility or to reweigh the evidence. Id.; State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168. The appellate court gives great deference to a jury’s decision to accept or reject a witness’s testimony in whole or in part. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Golson, 27,083 (La.App.2d Cir. 6/21/95), 658 So.2d 225.
The amended indictment charged Stacy with killing both victims and being a principal to both killings under R.S. 14:24; it further alleged both the specific intent to kill or commit great' bodily harm and engagement in the perpetration or attempted perpetration of an armed robbery. R.S. 14:30.1 A(l) and (2). The jury found him guilty of manslaughter as to both victims. Stacy challenges the sufficiency of the evidence to identify him as shooting the victims or as a principal to either of the crimes.
Stacy argues instead that the evidence proves he was no more than an accessory after the fact to both killings. He urges that the testimony of Donny Gilliard, the admitted driver of the van who testified he saw Stacy .fire a .357 magnum into the driver’s side of the victim’s car, must be discounted because Gilliard was testifying as a result of a plea bargain with the State. He also argues that the other eyewitness who testified, Tyrone Washington, could do no more than place Stacy at the scene of the shootings.
Gilliard testified that after he parked the van, three of his passengers — Stacy, Wesley “Boo” Thomas and Michael “Mikey” Birklett, each armed with a gun — jumped out and approached the victims’ car. Stacy and Birk-lett fired into the driver’s side at Williams, while Thomas fired at Loston from the passenger side. All three then got back in the van and Gilliard drove away. Gilliard also testified that he understood the group only intended to rob the occupants of the van, not kill them.
|5The State’s expert evidence strongly indicated that three shooters were involved. Sergeant Mark Rogers of the Shreveport Police Department, who was accepted as an expert in crime scene analysis, investigated the scene of the double homicide. He testified that three weapons were used in the shooting: one Mac-11 9 mm pistol, a .38 or .357 caliber revolver, and another 9 mm weapon.[5] Based on this finding, together with the position of the bodies, casings, spent *953 bullets and live rounds of ammunition found at the scene, Sgt. Rogers concluded that there were two shooters on the driver’s side of the car and one on the passenger side. R.pp. 1298-1304.
Richard Beighley, a criminalist with the North Louisiana Crime Lab, was accepted as an expert in firearm identification. He examined the weapons recovered at the time of Stacy’s arrest. Beighley matched the Mac-11 9 mm pistol recovered from room where Stacy was arrested in Houston (Exhibit T-30) with three cartridge cases found at the rear of the victims’ car. R.pp. 1335-1336. He also concluded that three weapons were used in the shooting.
Dr. Brenda Reams, a Caddo Parish Deputy Coroner and expert in forensic pathology, testified extensively to the wounds each victim received. She found that two weapons, a 9 mm and a .357, were fired almost simultaneously at the driver, Latson Williams. Thus she concluded that there were two shooters on the driver’s side of the car, and another shooter, also using a 9 mm, on the passenger side. R.pp. 1407-1410.
Detective Don Ashley investigated the case for the Shreveport Police Department. He testified that Tyrone Washington identified both Stacy and Wesley Thomas from a photographic line-up. He also concluded from his investigation that three shooters had fired at the victims’ car.
|6The testimony of the defense witnesses did not really contradict the State’s case. Leroy Washington (a/k/a Leroy Nelson) testified to seeing the van pulling out of the Caddo Career Center parking lot, but he could not identify anyone involved. Lloyd Reliford testified that he never saw Stacy with a weapon at Professional Automotive, but he did not witness the actual shootings. Finally, Don Norris, an expert in medical-legal death investigation and crime scene analysis, investigated the shootings for the defense. He concluded that while there were definitely three weapons used in the shootings, it was impossible to determine the number of shooters. He conceded there could have been three. Norris also interviewed Leroy Washington; Washington told him he saw a black male exit the driver’s side of the van, approach the passenger side of the victim’s car, and then go to the driver’s side and fire a gun.
Viewing this evidence in the fight most favorable to the State, we conclude the jury could have reasonably concluded that Stacy was guilty of two counts of manslaughter. In the first place, Stacy’s statement to officers and his testimony at Wesley Thomas’s trial placed him at the scene of the shooting. Donny Gilfiard crucially testified that Stacy fired into the driver’s side of the victims’ ear during a robbery. Gilfiard had entered a plea agreement with the State in exchange for his testimony, but this was disclosed to the jury in his testimony. Defense counsel cross examined Gilfiard with an eye toward exposing inaccuracies in his testimony, but the jury obviously chose to accept his version of how the events unfolded. • The choice was clearly within the jury’s province. State v. Stowe, supra; State v. Golson, supra. The expert evidence persuasively showed that three shooters were involved in the incident. Stacy fled the scene, escaped to Houston and hid in an apartment complex for unwed mothers until his arrest. When he was finally arrested he was in possession of one of the weapons used in the shootings.
|7In sum, a rational trier of fact could have found, beyond a reasonable doubt, that Stacy fired a gun through the driver’s side of the car, at close range, and that this indicated a specific intent to kill both victims or commit great bodily harm; and that he aided and abetted in the killings and robbery. The evidence therefore is sufficient evidence to convict Stacy of the charged offenses, second degree murder. The responsive verdicts of manslaughter will withstand the test of sufficiency. State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied 567 So.2d 93 (1990).

Excessive sentence

By his eighth and ninth assignments, Stacy urges the court erred in imposing consecutive rather than concurrent sentences for these convictions, and in denying the motion *954 to reconsider sentences. Specifically he contends the court faded to find various mitigating circumstances which would have counseled in favor of concurrent sentences under La.S.G. § 215 A(l).[6]
The general rule of concurrent sentences is La.C.Cr.P. art. 883:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. * * *
Concurrent sentences are not mandatory, nor are consecutive sentences necessarily excessive, simply because two convictions stem from the same course of conduct. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir.1987). The court may expressly direct that the sentences be consecutive, and simply state for the record the factors considered and reasons justifying the consecutive terms. \gState v. Coates, 27,287 (La.App.2d Cir. 9/27/95), 661 So.2d 571. The factors frequently considered include the defendant’s criminal history, State v. Ortego, supra; the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La. App. 2d Cir.), writ denied 496 So.2d 355 (1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied 435 So.2d 433 (1983); whether the defendant poses an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the defendant’s apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987); the potential for rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, supra; and whether the defendant received a benefit from a plea bargain, State v. Jett, supra.
Before imposing sentence, the District Court reviewed the pre-sentence investigation report (“PSI”) and the sentencing guidelines worksheet. The court stated for the record that Stacy was a member of a gang, completed only eighth grade, and had been suspended from school several times for fighting and causing disturbances. The court discussed Stacy’s history of drug and alcohol abuse. Stacy also had a juvenile record of battery and unauthorized entry into a school building; the latter resulted in a nine-month sentence in the juvenile detention center. Additionally, the court noted yet another arrest warrant issued for Stacy in a separate shooting.
Regarding the instant offense, the court stated that the shootings took place at a school parking lot close to a residential neighborhood. The court was also unfavorably impressed with the heinous nature of these crimes.
In mitigation, the court stated that Stacy held regular employment for four months in Houston before his arrest, and had been under the leadership of Wesley | 9Thomas at the time of the shootings. The court also considered that the victims were at the scene to purchase drugs, but this did not excuse the defendant’s actions. The court concluded that Stacy was an atypical 16-year-old dropout who had merited a sentence in excess of the guidelines. The court expressly directed the sentences to be consecutive.
In our view, the court adequately set forth the relevant aspects of Stacy’s criminal history, the particulars of the instant offenses, and all the pertinent mitigating factors. The court did not abuse its discretion in making the sentences consecutive. State v. Coates, supra. We further note that the maximum sentence for manslaughter was 21 years; Stacy’s total sentence is therefore less than one-half of the maximum.[7] Weighed against the offenses and the offender, the total sentence does not shock our sense of justice or strike us as needless infliction of *955 pain and suffering. These assignments lack merit.
Finally, we have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2).

Conclusion

For the reasons expressed, Gary Stacy’s convictions and sentences are affirmed.
AFFIRMED.

. We considered these issues (Assignment No. 1, suppression of physical evidence, No. 2, suppression of statements, and No. 5, admissibility of hearsay evidence) because they were likely to recur on retrial of the case. See State v. Edwards, 420 So.2d 663, 672 (La.1982).

. The remaining issues include Assignment No. 3, motion for mistrial, Nos. 6 and 7, sufficiency of the evidence, and Nos. 8 and 9, excessive sentence. The Supreme Court reserved the right to review all issues, including those addressed in our first opinion.

.La.C.Cr.P. art. 770 sets out the grounds for mandatory mistrial.

. “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original).

. Sgt. Rogers did not specify whether the second 9 mm was a pistol, carbine or rifle.

. At the time of Stacy’s sentencing, June 24, 1994, the Felony Sentencing Guidelines were still in effect. They were repealed by La. Acts 1995, No. 942, § 3, effective August 15, 1995.

. The maximum sentence for manslaughter was raised to 40 years by La. Acts 1992, No. 306, § 1.