719 So.2d 510 (1998)
STATE of Louisiana
v.
Eddie J. ARMANT.
No. 97-KA-1256.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*511 Dale J. Petit, Indigent Defender, Hester, for Appellant/Defendant Eddie J. Armant.
Anthony Falterman, District Attorney, Donald Candell, Assistant District Attorney, Convent, for Appellee State.
Before WICKER, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Defendant, Eddie Armant, appeals from his conviction of attempted second degree murder and sentence of forty years imprisonment at hard labor with credit for time served. We affirm and remand.
On May 28, 1996, defendant was charged with attempted second degree murder, a violation of La. R.S. 14:27, 14:30.1. He was arraigned on June 10, 1996, and pled not guilty. On August 19, 1996, defendant filed a motion to appoint a sanity commission to evaluate his competency to stand trial. The motion was granted and the trial court appointed Dr. Carl Poche (Dr. Poche) and Dr. John Paul Pratt (Dr. Pratt) to serve on the commission. A sanity hearing was held on November 12, 1996, following which, defendant was found competent to stand trial. On March 10, 1997, defendant waived his right to a trial by jury. On March 11, 1997 a bench trial was held and the trial judge found defendant guilty as charged. On April 17, 1997, defendant filed a pro se motion for new trial. Next, he filed a pro se motion to *512 dismiss his appointed counsel. On May 12, 1997, the trial court heard and granted the motion to dismiss counsel and appointed another attorney. Defendant's motion for new trial was heard and denied on July 14, 1997.
On August 11, 1997, defendant was sentenced to forty years imprisonment at hard labor with credit for time served. Defendant then filed an appeal. On September 9, 1997, defendant filed a motion to reconsider sentence, which the trial court denied on October 13, 1997. On October 22, 1997, defendant filed an application for post conviction relief, alleging that the evidence at trial was insufficient to support a conviction and that his sentence was excessive. On December 1, 1997, the trial court denied defendant's application, finding that it was premature.

FACTS
On the evening of May 7, 1996, Crystal Armant (Crystal) went to her mother's, Mildred Armant's (Mrs. Armant), apartment in the Baytree Housing Project in Vacherie to pick up her two young sons. She was concerned for the safety of her sons and her mother because defendant, her brother, was at the apartment. Defendant had been hostile toward Crystal and Mrs. Armant.
Shortly after Crystal arrived at the apartment, defendant began to argue to with Mrs. Armant. He complained that their mother planned to go to their sister's house in order to get away from him. When Mrs. Armant voiced her intention to leave, defendant punched Crystal in the eye. Defendant then punched Crystal's four-year-old son in the nose. Crystal's children ran from the house. Her vision blurred by the blow, Crystal went outside and called to neighbors for help.
Crystal ran through her mother's back yard toward the home of a neighbor, Brenda Bazile (Bazile). Defendant followed her and stabbed her in the face with a long-handled barbeque fork. She dropped to the ground and defendant continued to stab her about the head. She blacked out for a short time, then recovered her senses and attempted to fend off defendant. When she attempted to take the weapon from defendant, he bit her on the arm. Crystal then ran to Bazile's door and asked for help. Although Bazile was at home, she did not let her in Crystal out of fear of defendant.
Other neighbors, including Beverly Priestly (Priestly) and Wanda Jackson (Jackson), witnessed the attack. Priestly testified that she saw defendant hit Crystal with his fist and stab her and that she telephoned police to report the incident. Eddie Lewis, who witnessed the incident while visiting with Crystal, testified that he saw defendant stab Crystal with a barbeque fork. The attack finally ended when Priestly grabbed Crystal and took her across the street to Jackson's house. An ambulance arrived five minutes later and Crystal was transported to Chabert Medical Center in Houma.
Dr. Dereza Malik testified that he treated Crystal in the emergency room for stab wounds to the head and face, a human bite wound to the arm and a serious injury to the left eye. A cathode ray tube scan (CT scan) revealed a fracture to the ethmoid wall, a part of the sinus system.
Defendant's father, Sidell Armant, testified that he knew defendant and Crystal to fight, but that their fights are typical sibling disputes. He further testified that defendant is not a bad person.
On appeal, defendant asserts that the trial judge committed reversible error when he ruled that defendant was competent to proceed and that the verdict is contrary to the evidence presented. Defendant also asserts that the sentence is excessive. He further requests a review for patent error.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in relying on Dr. Poche's testimony that he was competent to stand trial. Defendant asserts that Dr. Pratt testified that defendant did not have the capacity to proceed to trial. Defendant argues that Dr. Pratt's opinion was more credible, since Dr. Pratt is a practicing psychiatrist, whereas Dr. Poche is a general practitioner.
The requirements for the composition of a sanity commission are set forth in C.Cr.P. article 644 A as follows, in part:

*513 ... The sanity commission shall consist of at least two and not more than three members who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations.... Every sanity commission shall have at least one psychiatrist as a member of the commission, unless one is not reasonably available, in which case, the commission shall have at least one clinical psychologist as a member of the commission. No more than one member of the sanity commission shall be the coroner or any of his deputies.
Under the foregoing provisions, the trial court was entitled to appoint one doctor to the sanity commission who is not a psychiatrist. Dr. Poche, the parish coroner, was qualified to serve on the sanity commission and to render an opinion as to defendant's capacity to proceed. The parties, in fact, stipulated to Dr. Poche's qualifications during the sanity hearing. At issue is whether the trial court erred in lending more weight to the conclusions of Dr. Poche, a general practitioner, than to those of Dr. Pratt, a specialist in psychiatry.
La.C.Cr.P. art. 641 provides, "Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." The two-part test of capacity to stand trial under this article is first, whether the accused understands the consequences of the proceedings, and 2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129, 1138 (1977). In State v. Bennett, 345 So.2d at 1138, the Louisiana Supreme Court set forth the factors to be used in determining competency to proceed:
Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
A court is permitted to receive the assistance of expert medical testimony on the issue of a defendant's mental capacity to proceed. However, the ultimate decision of competency is the court's alone. La.C.Cr.P. art. 647; State v. Bibb, 626 So.2d 913, 927-928 (La.App. 5th Cir.1993), writ denied, 93-3127 (La.9/16/94), 642 So.2d 188; reconsideration denied, 93-3127 (La.10/28/94), 644 So.2d 648; State v. Billiot, 94-2419 (La.App. 1st Cir. 4/4/96), 672 So.2d 361, 367 writ denied, 96-1149 (La.10/11/96), 680 So.2d 655. Further, the trial court's ruling on a defendant's mental capacity to proceed is entitled to great weight on appellate review and will not be reversed absent an abuse of discretion. State v. Bibb, 626 So.2d at 928.
Dr. Pratt testified that he examined defendant on September 29, 1996. He conducted a series of psychiatric tests and performed a lunacy assessment. Dr. Pratt concluded that defendant suffers from a bipolar disorder (also called manic depression). Although he found defendant to be very intelligent, Dr. Pratt judged him to be delusional, with his thoughts very disorganized. In his written report, Dr. Pratt noted that defendant understood *514 the charges against him. But, due to the thought disorder, he was unable to communicate this to others. As a result, Dr. Pratt was unable to learn from defendant with what crime he was charged, or any of the details of the incident. Dr. Pratt determined that defendant understood his rights and the significance of his plea. Defendant understood the consequences of a guilty verdict, but considered himself immune from a conviction. In his opinion, defendant would not be able to assist counsel in locating and preparing witnesses. Dr. Pratt found defendant's delusions to be such that it was doubtful he could listen to the testimony at trial and advise his attorney of distortions or misstatements. According to Dr. Pratt, defendant's understanding of the facts of his case was highly distorted and constantly changing. In his written report, Dr. Pratt also commented that he observed defendant swing from a manic state to a depressive state during the span of the interview. Dr. Pratt testified that when a person has delusions to the degree of defendant, it is not usually possible for that person to cooperate with his attorney. The doctor noted, both in his written report and his testimony, that defendant, a black person, was extremely distrustful of his attorney and of African-Americans in general. Dr. Pratt commented that bipolar disorder is a highly treatable condition. He recommended that defendant be placed on medication and that he be re-evaluated after three months.
Dr. Poche testified that he examined defendant on October 11, 1996 and found him to be cooperative, alert, aware then of the charges against him and the circumstances which led to his arrest, although he called the charges unfounded. Dr. Poche stated that defendant was dissatisfied with his representation and would have preferred to represent himself. Dr. Poche did not see any signs of bipolar disorder when he examined defendant, although he was aware of defendant's history of mental illness. Defendant indicated to Dr. Poche that he was then undergoing mental health treatment and that he was on medication. Dr. Poche did not know what type of medication defendant was taking. Dr. Poche stated that he would need to see defendant over a long period of time in order to make a diagnosis of bipolar disorder. He concluded that defendant was competent to stand trial.
Based on the evidence and on defendant's demeanor at the hearing, the trial judge determined that defendant was competent to stand trial. The trial judge chose to accept Dr. Poche's evaluation. He also relied on his own observations of defendant at the hearing. We find no abuse of discretion in this finding.
We note that defendant was an active participant in the motion proceedings prior to and during trial. Defendant had filed numerous pro se pretrial motions, which were disposed of immediately prior to trial. He responded appropriately to the trial judge's questions and it is clear that he understood the rulings on the motions. Several times during trial defendant spoke aloud in response to the statements made by witnesses. These comments, while out of order, show that he understood the proceedings and was able to assist counsel in his defense. These facts, while not dispositive, support the trial judge' conclusion at the sanity hearing that defendant was competent to stand trial. Accordingly, we find that the trial judge did not err in declaring defendant capable to stand trial.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the state failed to prove that he had the specific intent to kill his sister and that, at most, the evidence proved an aggravated battery.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Thorne, 93-859 (La.App. 5th Cir. 2/23/94), 633 So.2d 773, 776; State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1232; State v. Ortiz, No. 96-KA-1609 (La.10/21/97), 701 So.2d 922, 930.
*515 In order to prove guilt by circumstantial evidence, the state must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. This is not separate from the Jackson standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 701 So.2d at 930.
To prove an attempted second degree murder, the state must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. La.R.S. 14:27, 14:30.1; State v. Lewis, 97-160 (La.App. 5th Cir. 7/29/97), 698 So.2d 456, 459; State v. Andrews, 95-129 (La.App. 5th Cir. 11/15/95), 665 So.2d 454, 456. Although specific intent to inflict great bodily harm may support a murder conviction, attempted murder requires a specific intent to kill. State v. Snyder, 97-226 (La. App. 5th Cir. 9/30/97), 700 So.2d 1082; State v. Holmes, 94-907 (La.App. 5th Cir. 3/15/95), 653 So.2d 642, 645.
Before the merits of defendant's sufficiency claim can be addressed, it must be noted that the trial judge may have misapplied the law in arriving at his verdict. In his oral reasons for judgment, the judge stated, in part, "So we have to look at whether or not there was specific intent to kill or was there specific intent to inflict great bodily harm."[1] The trial judge further commented, "Do we have great bodily harm? I think, yes, we do have great bodily harm." Finally, the trial judge found, "In this situation Mr. Armant did not stop inflicting injury until he did inflict great bodily harm; therefore, his specific intent to inflict great bodily harm was accomplished. And the attempt to inflict great bodily harm or the intent that's in the attempt statute has been met."[2] On the other hand, the trial judge also stated that the victim was lucky she was not killed and that defendant was acting in such a way as to render the victim "either lifeless" or causing great bodily harm and did not stop until that harm was done.[3] In the motion for new trial, the trial judge stated that he had previously determined that defendant had the specific intent to kill his sister.
The trial judge in a bench trial is not required to give reasons in support of his verdict, nor is he required even to charge himself on applicable law, since he is presumed to know it. State v. Pizzalato, 93-1415 (La.App. 1st Cir. 10/7/94), 644 So.2d 712, 714, writ denied, 94-2755 (La.3/10/95), 650 So.2d 1174. The proper method of preserving for appeal the issue of whether the trial court has correctly informed itself of the legal principles applicable to the case is to request the judge to charge himself before the verdict as to a disputed issue of law and to object to it if incorrect or if the trial court refuses to give the special charge. La. C.Cr.P. arts. 781, 841; State v. Reeves, 342 So.2d 605, 608 (La.1977); State v. S.P., 608 So.2d 232 (La.App. 5th Cir.1992).
In State v. S.P., defendant complained on appeal that the trial judge, in a bench trial, had improperly instructed himself on the elements of attempted first degree murder, in that he included the intent to inflict great bodily harm. This Court held that the defendant had not preserved the issue for appeal, since he had not raised a timely objection at trial. This Court further held that even if the alleged error had occurred, it was harmless. State v. S.P., 608 So.2d at 235.
The Louisiana Supreme Court declared an exception to the contemporaneous objection rule where the error is the very definition of the crime of which the defendant was convicted and where the record bears full and sufficient proof of the error without the necessity for further hearing. State v. Williamson, 389 So.2d 1328, 1331 (La.1980).[4] In Williamson, the defendant was charged with *516 first degree murder, and a jury found him guilty of second degree murder. In its instructions, the trial court gave the jury the wrong definitions of the charged and responsive crimes. There was no contemporaneous objection to the erroneous charges. The Williamson court, while recognizing that the defendant had not complied with the contemporaneous objection rule and that the erroneous jury charges were not errors patent on the face of the record, reversed the defendant's conviction. The Supreme Court found that it is within the province of the reviewing court to entertain complaints of constitutional violations, notwithstanding that consideration of such complaint, more often than not, is deferred until the filing of a writ of habeas corpus, whether they are objected to at trial or raised on appeal. The Supreme Court determined that when the asserted error involves the very definition of a crime, it is of such importance and significance as to violate fundamental requirements of due process. Id. at 1331.
In State v. Raymo, 419 So.2d 858 (La. 1982), the Supreme Court recognized an insufficiency in the evidence at trial although the defendant failed to affirmatively raise the issue on appeal. The Supreme Court reasoned that the error was of such magnitude that it required reversal of the defendant's conviction and sentence, regardless of how it was brought to the attention of the reviewing court. Id. at 861. Because of the magnitude of the possible error, we will address it.
In various cases involving erroneous jury charges related to the elements of the crime, there are decisions reversing the conviction and cases affirming the conviction after finding harmless error.
In State v. Jynes, 94-745 (La.App. 5th Cir. 3/1/95), 652 So.2d 91, this court recognized the due process considerations addressed in Williamson and Sullivan. There the trial judge improperly charged the jury as to the crime of attempted manslaughter. However, there was a question as to whether the defendant acquiesced to the charge. After an analysis of the jurisprudence and consideration of the particular facts, this court found that the improper jury instruction constituted harmless error. There was no question in that case that defendant pointed a gun directly and specifically at the victim. We distinguished Williamson, Sullivan, and three other cases which concluded otherwise: State v. Pyke, 93-1506 (La.App. 3rd Cir. 5/4/94), 640 So.2d 460; State v. Holmes, 620 So.2d 436 (La.App. 3rd Cir.1993), writ denied, 626 So.2d 1166 (La.1993); and State v. Porter, 626 So.2d 476 (La.App. 3rd Cir.1993). See: State v. Jynes, 652 So.2d at 97-98.
The Fourth Circuit recently applied the harmless error analysis to an "intent to inflict great bodily harm" instruction and found the error harmless where the evidence at trial was sufficient to show specific intent to kill. State v. Chisolm, 95-2028 (La.App. 4th Cir. 3/12/97), 691 So.2d 251, 255, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195.
In State v. Brunet, 95-0340 (La.App. 1st Cir. 4/30/96), 674 So.2d 344, 347-348, writ denied, 96-1406 (La.11/1/96), 681 So.2d 1258, the First Circuit found harmless error where an instruction by the trial court could have led the jury to believe that the state had to prove only an intent to inflict great bodily harm in order to convict the defendant of attempted manslaughter. The Brunet court rejected the Pyke court's application of the Sullivan "reasonable doubt" analysis in addressing an erroneous "specific intent to inflict bodily harm" jury charge. The First Circuit found that an erroneous instruction as to the elements of the crime does not effect the framework of the trial such as to require automatic reversal. The Brunet court reasoned:
The only question is whether the verdict is based on the correct element, specific intent to kill, or on the incorrect element, specific intent to commit great bodily harm. If the jury verdict is surely unattributable to the instruction that attempted manslaughter can be based upon specific intent to commit great bodily harm, rather than specific intent to kill, there is harmless error. Consequently, unlike the situation involving reasonable doubt where there is no jury verdict, there is one here, and a harmless error review is appropriate.
Id. at 348.
In State v. Pyke, distinguished in State v. Jynes and rejected in State v. Brunet, the *517 defendant was tried and convicted of attempted second degree murder. The trial court erroneously instructed the jury that an essential element of attempted second degree murder was specific intent to kill or inflict great bodily harm. The reviewing court recognized the error and reversed the defendant's conviction. The court reasoned that an instruction which misleads or confuses the jury as to an essential element of the offense is constitutionally infirm, as it is violative of the defendant's due process rights and was not harmless. It likened the "specific intent to inflict great bodily harm" error to the "beyond a reasonable doubt" error recognized in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). State v. Pyke, 640 So.2d at 465.
In Sullivan, the Supreme Court reversed the defendant's conviction based on the trial court's erroneous jury charge on reasonable doubt. The high court found that the error was not amenable to harmless error analysis, as a deficient charge on reasonable doubt vitiates all of the jury's factual findings and is thus violative of the defendant's Sixth Amendment right to a jury trial. Sullivan v. Louisiana, 113 S.Ct. at 2082.
In State v. Holmes, 620 So.2d 436 (La. App. 3rd Cir.1993), also distinguished in State v. Jynes, the Third Circuit found reversible error where the trial court improperly instructed the jury that specific intent to inflict great bodily harm is an element of attempted second degree murder. Id. at 439-440. Under the Third Circuit's reasoning, the jury's verdict is reversible as being based on an improper understanding of the law.
With due process considerations in mind, we nevertheless find that the test to be applied depends upon the facts of the particular case. Under our particular facts, we agree with the harmless error analysis and conclusion in State v. S.P. and the decisions in State v. Brunet and State v. Chisolm. We note that this was a judge, not a jury, trial. Further, our facts are distinguishable from State v. Williamson, State v. Pyke and State v. Holmes.
Interrelated with the foregoing considerations is defendant's sufficiency claim. Under the reasoning in State v. Chisolm and State v. Jynes, the trial court's erroneous application of the law is harmless error, if the evidence at trial nonetheless supports a finding of specific intent to kill.
Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). The determination of specific criminal intent is a question of fact. State v. Seals, 95-305 (La.11/25/96), 684 So.2d 368, 373; State v. Lewis, 698 So.2d at 459. Specific intent may be inferred from circumstances and actions of defendant. Id. at 373; State v. Lewis, 698 So.2d at 459. In addition, specific intent to kill can be implied from the intentional use of a deadly weapon to produce injuries involving serious risk of death. State v. Weiland, 562 So.2d 950, 952-953 (La.App. 5th Cir.1990).
During the attack on Crystal, defendant used a sharp, dangerous object, a barbeque fork. Dr. Malik testified that the stab wounds incurred by Crystal required sutures, but were not life-threatening. However, Dr. Malik further noted that Crystal was struck near a major artery and that an injury to the artery would have threatened her life. The doctor also testified that the injury to Crystal's eye showed the use of great force by her attacker. Crystal has five visible scars caused by the stab wounds.
The evidence shows that defendant relentlessly pursued the victim through the neighborhood as she tried desperately to escape his violent assault. The testimony of Lewis, Priestly and the victim herself shows that defendant continued to assault her the entire time. The assault would probably have continued, but for the intervention of Priestly and other neighbors.
Given these facts, we find that the evidence proves that defendant had the specific intent to kill his sister. We further find that the trial judge's verdict is unattributable to the statements he made prior to convicting defendant. Even though he kept referring to the threat of bodily injury, other comments indicate that he also believed defendant *518 intended to kill his sister. Thus, we find that viewing the evidence in the light most favorable to the prosecution, the state proved the essential elements of the crime beyond a reasonable doubt.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant asserts that his sentence of forty years incarceration at hard labor is constitutionally excessive, considering that this is his first felony conviction.
Both the United States and Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. VIII; La. Const. Art. I, § 20. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. State v. Daigle, 96-782 (La.App. 5th Cir. 1/28/97); 688 So.2d 158, 159; State v. Lobato, 603 So.2d 739 (La.1992), appeal after remand, 621 So.2d 103 (La.App. 2nd Cir. 1993); writ denied in part and granted in part on other grounds, 627 So.2d 644 (La. 1993).
In reviewing a sentence for excessiveness, this court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Daigle, 688 So.2d at 159; State v. Jackson, 597 So.2d 1188, 1189 (La.App. 5th Cir.1992). The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. State v. Daigle, 688 So.2d at 159; La.C.Cr.P. art. 881.4(D). A sentence may be reviewed for excessiveness even though it is within statutory range. Id. at 159. The sentencing range for attempted second degree murder is ten to fifty years. La.R.S. 14:27, 14:30.1.
The trial court considered a presentence investigation report prior to imposing sentence. The trial judge also gave extensive reasons for the sentence. He perceived defendant to be a violent and dangerous person. The trial judge noted that defendant had an extensive history of criminal arrests and convictions, which included some battery and assault charges. The trial judge further found that defendant's attack on his sister was particularly serious because it was unprovoked and exhibited deliberate cruelty. The trial judge stated that defendant was in need of correctional treatment, which could be best administered in a custodial environment. He also believed that defendant was likely to commit other such acts if released.
In State v. Slang, 94-332 (La.App. 5th Cir. 11/16/94), 646 So.2d 1037, writ denied, 94-3063 (La.4/7/95), 652 So.2d 1344, this Court found a fifty-year sentence for attempted second degree murder was not excessive, where the defendant's attack was violent and unprovoked, and the defendant had an extensive criminal history and displayed an inability to lead a crime-free life. In State v. Golson, 27,083 (La.App. 2nd Cir. 6/21/95), 658 So.2d 225, writ denied, 97-0165 (La.10/10/97), 703 So.2d 600, the court found that a forty-year sentence for attempted second degree was not excessive where the defendant shot his wife three times as the result of a marital dispute.
After our review, we find that the sentence is not excessive.

ERROR PATENT REVIEW
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Boudreaux, 95-153 (La. App. 5th Cir. 9/20/95), 662 So.2d 22, 28.
*519 We first find that the trial court imposed an illegally lenient sentence. Both the attempt statute (La. R.S. 14:27D(1)) and the second degree murder statute (La. R.S.14:30.1B) require that defendant's sentence be served without benefit of parole, probation, or suspension of sentenc. When he imposed sentence, the trial judge did not make this provision. However, an appellate court may not amend or set aside an illegally lenient sentence on its own motion, when the defendant has appealed and the State has not sought review of sentence. State v. Bradford, 95-929 (La.App. 5th Cir. 6/25/96), 676 So.2d 1108, 1111. It is noted that the state did not raise this issue.
Second, our review reveals that defendant was not advised of the three-year time limit for filing an application for post conviction relief, as required by La.C.Cr.P. art. 930.8. This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. However, the failure to inform defendant is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Birden, 95-1007 (La.App. 5th Cir. 5/15/96), 675 So.2d 1187, 1190-1191; State v. Crossley, 94-965 (La.App. 5th Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459.
Accordingly, defendant's conviction of attempted second degree murder and sentence are hereby affirmed. The case is remanded for the trial judge to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] (Id.).
[2] (R., p. 441).
[3] Id.
[4] In State v. Thomas, 427 So.2d 428 (La.1982), the Louisiana Supreme Court noted that Williamson not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction raised for the first time on appeal. The Thomas court further stated that "This court has not created or recognized a plain error rule of general application." Id. at 435.